**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

1010 COMMON, LLC                                     CIVIL ACTION

VERSUS                                               NO. 20-2326

CERTAIN UNDERWRITERS AT LLOYD'S,                     SECTION "B"(5)
LONDON ET AL

<u>**ORDER AND REASONS**</u>

Before the Court is defendants' "Motion to Compel Arbitration
and Dismiss Claims Against Insurers or Alternatively, Stay
Litigation Pending Arbitration" (Rec. Doc. 4), plaintiff's
"Opposition to Defendants' Motion to Compel Arbitration and
Dismiss" (Rec. Doc. 10), plaintiff's Motion to Remand (Rec. Doc.
9) and defendants' "Opposition to Motion to Remand" (Rec. Doc.
13). For the reasons discussed below,

    **IT IS ORDERED** that the plaintiff's motion to remand is **DENIED;**
the defendants' motion to compel arbitration is **GRANTED;** and the
matter is **DISMISSED WITHOUT PREJUDICE.**

I.    <u>**FACTUAL AND PROCEDURAL HISTORY**</u>

    Plaintiff 1010 Common LLC ("1010 Common") owned two buildings
both located in the City of New Orleans on 1010 Common Street and
210 Baronne Street ("Properties"). Rec. Doc. 1-1 at 3. Defendant
Underwriters at Lloyd's of London ("Underwriters") issued to 1010
Common commercial property insurance coverage for all risks of
direct physical loss or damage to the Properties, "unless
specifically excluded." *Id.* According to plaintiff, this insurance

1

was issued on a quota share basis with each insurer assuming a percentage of the total risk insured. *Id.* From March 24, 2019 to March 24, 2020, the Policy went into effect, and its coverage was subject to a limit of $208,045,000 with a $2,000,000 annual aggregate limit for flood at the 1010 Common Street building; the insured would determine the value upon which coverage would be provided – either on an Actual Cash Value or Repair or Replacement Cost Value basis. *Id.* at 3-4.

Per the plaintiff's state complaint, on July 9, 2019 and July 10, 2019, New Orleans underwent severe weather conditions that caused extensive water damage and flooding through the Central Business District. *Id.* at 4. As such, the 1010 Common Street and 210 Baronne Street Properties suffered significant property damage as a result of the flooding and also wind-driven damage suffered by the latter property ("The Loss"). On July 10, 2019, the plaintiff notified its broker Southern Insurance Agency of the Loss, who subsequently submitted a claim to the National Flood insurance Program. *Id.*

On September 26, 2019, Southern Insurance submitted a claim to Underwriters for the full amount of the loss not covered by the national Flood Insurance Program, seeking coverage for flood damage sustained at 1010 Common Street in excess of the Policy's flood deductible, and all food and wind-driven rain damage at 210 Baronne Street in excess of the Policy's windstorm or hail

2

deductible. *Id.* According to the plaintiff, Underwriters retained Sedgwick Claims Management Services to adjust the Loss, which then contracted with the Synergy Adjusting Corporation, who retained Madison, Kneppers & Associates, Inc. ("MKA") to prepare a valuation report of the Loss. *Id.* at 4-5. 1010 Common alleges that it elected to take the actual cash value valuation of the Claim, but MKA's valuation report was limited to the amount actually incurred in repairing or replacing damaged property and notably omitted any coverage for quoted work. *Id.* at 5.

Per the state complaint, MKA'S valuation is allegedly inconsistent with the Policy's Section IV, Valuation Provision which provides, ". . .If the property is not repaired, rebuilt or replaced as soon as reasonably possible after the loss or damage, the value of the property will be determined on an Actual Cash Value basis." *Id.* Although 1010 Common maintains that MKA's report was improper throughout, it alleges that a section of MKA'S report specifically accounted for $934,930.97 of the Claim. *Id.* Nonetheless, MKA allegedly reduced the claim's value to $0 for 1010 Common's failure to provide an invoice for completed work, despite the plaintiff's actual cash value election. *Id.*

According to 1010 Common, on April 5, 2020, Underwriters, via Sedgwick, notified 1010 Common that it was not entitled to coverage under the Policy because the value of the covered Loss within the Claim did not exceed the Policy's applicable deductible. *Id.*

3

Plaintiff further noted that Section D(5)(d) of the Policy's supplemental declarations permitted Underwriters to apply the windstorm wind-driven rain deductible for 1010 Common Street to the Claim. *Id.*

1010 Common indicates that the Policy provides separate deductible calculations for Flood and Windstorm "perils", but the Policy also contained the following provision, "If two or more peril deductible amounts provided in this Policy apply to a single Occurrence, the total to be deducted shall not exceed the largest deductible applicable, unless otherwise stated in this Policy. *Id.* at 5-6. Accordingly, Plaintiff alleges that the Underwriters misused this provision as a means to apply the highest deductible (in this case the wind-driven rain deductible) to the entire amount of the loss, despite that the 1010 Common Street property did not suffer any wind-driven rain loss. *Id.* at 6.

Additionally, Plaintiff alleges that MKA's report arbitrarily valued many individual line items of the Claim at significantly less than their actual cash value. *Id.* Thus, according to 1010 Common, MKA's valuation report (1) properly approached parts of the Claim based on the actual cash value but dramatically undervalued them and (2) improperly approached the other parts of the Claim and required invoices for completed work – rather than acknowledging coverage for the actual cash value as elected. *Id.* Thus, as a result of the allegedly faulty valuation and improper

4

interpretation and application of the Policy's deductible provisions, 1010 Common alleges that Underwriters wrongfully denied coverage for the entirety of the Loss by claiming that the covered amounts of the Loss did not exceed the deductible. *Id.*

On July 8, 2020, 1010 Common filed a petition for damages in the 24th Judicial District Court for the Parish of Jefferson. Rec. Doc. 1-1 at 1. 1010 Common brought claims therein against the defendants for breach of contract under the Policy, seeking compensation for the full value of the Claim in addition to extra-contractual damages, mental anguish and attorney's fees pursuant to La. R.S. 22:1292 and 1973. *Id.* at 7; Rec. Doc. 4-1 at 2.

On August 21, 2020, the defendants removed the matter to this Court by invoking federal question under 28 U.S.C. §§ 1441 and 1446. Rec. Doc. 1 at 1-2. Accordingly, the defendants assert that there is a valid arbitration clause under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") and claim that this Court has original jurisdiction pursuant to 9 U.S.C. § 202, 203, and 205. *Id.* at 2.

On that same date, the defendants invoked their alleged right to arbitrate the matter and filed the instant motion to compel arbitration and dismiss claims against the insurers or, in the alternative, stay litigation pending arbitration. Rec. Doc. 4. According to Underwriters, the Loss to the Property was covered under the Policy, which contains the following Arbitration Clause:

C. ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out. . .

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit. . .

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance. . .

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

Rec. Doc. 4-1 at 3.

On September 21, 2020, 1010 Common timely filed an opposition, arguing that the arbitration provision is void as a matter of law, as the Policy contains a Service of suit endorsement, which effectively modified the Policy. Rec. Doc. 10 at 3. According to Plaintiff, following the basic coverage form of the Policy, there

are a number of Amendatory Endorsements, including the following endorsement pertaining to Lloyd's of London:

> WITH RESPECT TO THE COVERAGE PROVIDED BY CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, THE FOLLOWING CLAUSES (SERVICE OF SUIT and APPLICABLE LAW) SHALL APPLY:
>
> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriter hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.
>
> ***
>
> This insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provision of the Service of Suit Clause (USA).

*Id.* at 3.

On September 21, 2020, Plaintiff also filed a motion to remand, alleging there is no complete diversity between the parties nor does the claim exceed the $75,000 threshold required by 28 U.S.C. § 1332. Rec. Doc. 9-2 at 1. Additionally, they claim that the Convention's removal statute is not applicable to the present dispute. *Id.*

On October 6, 2020, the defendants timely filed an opposition to the plaintiff's motion to remand, alleging Congress intended to create special removal rights under 9 U.S.C. § 205. Rec. Doc. 13. at 7.

## II.  LAW AND ANALYSIS

### A. <u>Removal Jurisdiction Under the Convention</u>

The Convention is an international treaty with "the principal purpose. . .to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced by the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). Congress enacted the Convention Act within the Federal Arbitration Act to establish procedures by which federal courts must follow. *See* 9 U.S.C. §§ 201-208; *see also McDermott Int'l v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991).

Specifically, Section 203 provides, "an action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Therefore, district courts generally retain original jurisdiction over the action or proceeding, regardless of the amount in controversy. *Port Cargo Service, LLC v. Certain Underwriters at Lloyd's London*, Civil Action No: 18-6192, 2018 WL 4042874, at *4 (E.D.la. Aug. 24, 2018). Section 205 states thereafter:

> Where the subject matter of an action or proceeding pending in a [s]tate court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205. Although the statute does not define "relates to", "federal courts have recognized that the plain and expansive language of the removal statute embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention." *Acosta v. Master Maint. And Constr. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006).

In its motion to remand, the plaintiff alleges that the instant matter must be remanded back to state court in part because the defendants have failed to establish both complete diversity and damages in excess of $75,000. Rec. Doc. 9-2 at 9. However, this argument is irrelevant given that the defendants removed the case under 28 U.S.C. §§ 1441 and 1446 federal question jurisdiction by citing 9 U.S.C. §§ 202, 203 and 205. Rec. Doc. 1 at 2. Thus, the following remand analysis will be scrutinized under the Convention context, wherein the removing defendant must establish that (1) the arbitration clause falls under the Convention and (2) the state court litigation relates to the arbitration clause. *Acosta*, 452 F.3d at 376.

### i. **Whether the arbitration clause falls under the Convention**

First, we must determine whether the instant arbitration clause falls under the Convention. Section 202 provides whether an arbitration agreement is within the Convention's purview, "An arbitration agreement or arbitral award arising out of a legal relationship, including a transaction, contract or agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202. The section continues that agreements entirely between United States citizens do not fall under the Convention "unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *Id.*

Article II of the Convention also indicates which arbitration agreements are subject to the Convention,

> Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

The Convention, Article II(1). The Article thereafter defines "agreement in writing" to include "an arbitral clause in a contract or an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams." The Convention, Art. II(2).

10

Plaintiff argues that the present matter is not subject to the Convention because Certain Underwriters is the only foreign entity while the remaining insurers have principal places of business and are domiciled in the United States. Rec. Doc. 9-2 at 10. Moreover, Plaintiff maintains that the exceptions pertaining to agreements between two U.S. citizens are not implicated because the insured property is located in Louisiana, performance was to be rendered within the United States, and there is no relation to any foreign state. *Id.* at 11. According to 1010 Common, because the insurance obligations are shared among domestic insurers and investors, the defendants would need to establish the foreign citizenship of every Name involved in the underwriting of the Policy. *Id.*

Plaintiff was mistaken in stating all parties except Certain Underwriters are United States citizens for purposes of Section 202. Rec. Doc. 13 at 10. Certain Underwriters at Lloyd's of London are domiciled and have its principal place of business in London, England. Rec. Doc. 1-1 at 2. Defendants identified the foreign citizenship of one of its co-defendant Insurers HDI Global Specialty SE which is domiciled and has its principal place of business in Germany. *Id.*

The Fifth Circuit held that the citizenship of non-party Names cannot be considered for the purpose of invalidating subject matter jurisdiction. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 683

11

(5th Cir. 2003). Although the *Corfield* defendants removed the case under the diversity statute, the court's reasoning is pertinent to the instant matter because the citizenship of other Names under the Policy who were not made parties to the suit should likewise not be considered to determine removability under Section 202.

Even assuming, *arguendo*, that the citizenship of every Name under the Policy should be considered, plaintiff is only partially correct by stating that the Convention would not apply to an agreement between two U.S. citizens. The mere presence of two domestic parties does not foreclose the "fall under" analysis. A commercial agreement that involves *at least one party who is not a U.S. citizen* or property located abroad, envisage performance abroad, or have some other reasonable relationship with one of more foreign states is deemed to fall under the Convention. *See Ling v. Deutsche Bank AG*, No. 4:05CV345, 2005 WL 3158040, at *5 (E.D.Tex. Nov. 28, 2005); *Neptune Shipmanagement Services (PTE.), Ltd. v. Dahiya*, No. 20-1525, 2020 WL 5545689, at *2 (E.D.La. Sept. 16, 2020).

Thus, Certain Underwriters at Lloyd's and HDI Global Specialty SE are both foreign entities, overcoming plaintiff's argument that the defendants have not established foreign status for the Convention to apply. Because the parties do not dispute that the agreement is commercial in nature and there is at least

one party who is not a U.S. citizen, this Court should find that the arbitration clause falls under the Convention.

### ii.   Whether 1010 Common's Claims are related to the arbitration clause

The Court must now determine whether Plaintiff's claims relate to the arbitration provision. When a party uses the Convention as its vehicle for removal, the Fifth Circuit has guided lower courts to make a "very limited inquiry" by stating:

> [W]henever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). Thus, for removal to be proper, the defendant must merely demonstrate "a nonfrivolous connection to an international arbitration agreement." *OJSC UKRNAFTA v. Carpatsky Petroleum Corp.*, 957 F.3d 487, 495-96 (5th Cir. 2020).

In its motion to remand, the plaintiff disputes any relation between its claims and the arbitration clause on the basis that the Policy's Service of Suit provision effectively made the arbitration provision inapplicable. Rec. Doc. 9-2 at 10. Because plaintiff addresses this argument in further detail in its

13

opposition to the defendants' motion to compel arbitration, we must determine whether 1010 Common's claims are subject to arbitration.

## B. <u>The Arbitrability of the Claims under the Convention</u>

The Convention Act provides, "a court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 272-73 (5th Cir. 2002) (citing 9 U.S.C. § 206). Like the Arbitration Act, the Convention provides that "if a dispute in a pending lawsuit is subject to arbitration, the district court shall on application of one of the parties stay the trial of the action until such arbitration has been had." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985) (citing 9 U.S.C. § 3) (internal quotes omitted).

When a party seeks to compel arbitration under the Convention, courts apply a "very limited inquiry" in consideration of the following: (1) whether there was a written agreement to arbitrate the dispute (i.e., "is the arbitration agreement broad or narrow"), (2) whether the agreement provides for arbitration in the territory of a Convention signatory, (3) whether the arbitration agreement arises out of a commercial legal relationship, and (4) whether a party to agreement is not an American citizen. *Id.* 1144-45.

14

Accordingly, if these requirements are met, "the Convention requires district courts to order arbitration." *Id.* at 1145.

The main dispute between the parties is whether there was a valid arbitration agreement in this matter. Underwriters assert that the governing insurance contract between the parties contained a clause requiring arbitration of "all matters in difference." Rec. Doc. 4 at 2. By contrast, 1010 Common argues that the Service of suit endorsement within the Policy effectively voids the arbitration agreement. Rec. Doc. 10 at 2.

### i. Choice of Law

Because plaintiff disputes the applicability of the choice of law provision set forth in the arbitration agreement, we must first determine what state law applies in the instant matter. When exercising federal question jurisdiction, courts conduct a choice of law analysis pursuant to federal common law. *Jimenez v. Sun Life Assur. Co. of Canada*, 486 Fed.Appx. 398, 406 (5th Cir. 2012) (citing *Haynesworth v. The Corporation*, 232 F.3d 956, 962 (5th Cir. 2009). When courts review choice of law clauses as it pertains to international disputes, they are presumptively enforced, unless "the party seeking to avoid enforcement of the clause can overcome the presumption by a clear showing that the clause is unreasonable under the circumstances." *Id.* at 408 (internal quotes omitted).

The disputed choice of law provision within the arbitration agreement states, "[t]he seat of the Arbitration shall be in New

York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance." Rec. Doc. 13 at 4. The plaintiff suggests that the Court conduct a traditional contractual interpretation analysis pursuant to Louisiana law, and in doing so, it argues that the challenged provision only applies to matters before the Arbitration Tribunal and not to enforcement suits such as the one before this Court. Rec. Doc. 10 at 4.

Plaintiff cites to *Prejean v. Guillory* in which the Louisiana Supreme Court cautions that when a clause is clear and unambiguous, "it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Prejean v. Guillory*, 2010-0740 (La. 7/2/10), 38 So.3d 274, 279. Plaintiff also cites to the *Abraham* case, which followed the United States Supreme Court's holding in *Klaxon* that the choice of law rules of the state wherein the action is filed governs the dispute. *See Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 So.3d 609, 611 (5th Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). However, plaintiff omits that the holding in *Abraham* only applies to cases that were removed under diversity jurisdiction whereas this dispute was brought before this Court in the presence of a federal question. Thus, as stated above, conflict of law rules pursuant to the federal common law shall govern in the present matter.

16

a. *Conflict of law analysis under the federal common law*

According to the Second Restatement of Conflict of Laws, the applicable state law shall be that of the state chosen by the parties "to govern their contractual rights and duties. . .if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws §§ 187, 218 (Am. L. Inst. 1971). The court may nevertheless elect to not apply the chosen law if (a) the chosen state has no substantial relationship to the parties or the transactions and there is no other reasonable basis for the choice or (b) application of the state law would be contrary to a fundamental state policy that has a materially greater interest in determining that particular issue. REST. 2d CONFL § 187.

However, if parties to a contract specify that arbitration shall occur in a certain state, this provision "may provide some evidence of an intention on their part that the local law of this state should govern the contract as a whole." REST. 2d CONFL. § 218, Comment(b). This is because the provision not only "shows that the parties had this particular state in mind" but also that "the parties must presumably have recognized that arbitrators sitting in that state would have a natural tendency to apply its local law." *Id.*

17

Underwriters maintain that the Policy contains an enforceable New York choice of law provision and cite to *Louisiana Generating,* wherein the Fifth Circuit enforced a similar New York choice of law provision in an insurance dispute between the insured Louisiana resident and its insurer. *Louisiana Generating, L.L.C. v. Illinois Union Ins. Co.*, 719 F.3d 328 (5th Cir. 2013).

1010 Common argues that the arbitration agreement is unenforceable because it is against public policy under Louisiana law. Rec. Doc. 10 at 13. Pursuant to Louisiana Revised Statute 22:868, insurance contracts containing an agreement to divest the state of Louisiana of jurisdiction over claims against the insurer are void. La. R.S. 22:868(A). As such, Louisiana courts have interpreted this statute to prohibit arbitration clauses within insurance contracts. *Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So.2d 1383, 1394 (La. 1982).

To ensure that states held the right to regulate the insurance industry, Congress enacted the McCarran-Ferguson Act, 15 U.S.C. § 1102, *et seq.*, which provides in pertinent part, "No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance. . .unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1102(b). Thus, the McCarran-Ferguson Act effectively reverses the preemptive effect in cases involving the state regulation of the insurance industry. *Munich*

18

*American Reinsurance Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998).

However, as it pertains to insurance contracts subject to the Convention, the Fifth Circuit definitively held that the McCarran-Ferguson Act does not apply. *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 718 (5th Cir. 2009) (en banc), cert. denied, 562 U.S. 827 (2010). This holding was based on two reasons:

> (1) Congress did not intend to include a treaty within the scope of an 'Act of Congress' when it used those words in the McCarran-Ferguson Act, and (2) in this case, it is when we construe a treaty – specifically, the Convention, rather than the Convention Act – to determine the parties' respective rights and obligations, that the state law at issue is superseded.

*Id.; see also Southwestern Elec. Power Co. v. Certain Underwriters at Lloyds of London*, No. 12-cv-2065, 2013 WL 5427888, at *2, n. 1 (W.D.La. Sept. 26, 2013); *but also Port Cargo Service*, 2018 WL 4042874, at *7, n. 6 (finding that La. R.S. 22:868 does not prevent domestic insurers from invoking arbitration clauses in the foreign insurers' contracts with plaintiffs under the Convention through equitable estoppel). Thus, upon applying this reasoning to the pending dispute, Underwriters argue that the obligations of the treaty supersede the Louisiana statute prohibiting arbitration of insurance claims. Rec. Doc. 4-1 at 15.

Curiously, 1010 Common cites to the *McDonnel Group* case, wherein the Fifth Circuit acknowledged Louisiana's strict

prohibition against arbitration clauses within insurance contracts. *See McDonnel Group, L.L.C. v. Great Lakes Insurance SE, UK Branch*, 923 F.3d 427, 431 (5th Cir. 2019). Yet, despite the state's public policy, the Fifth Circuit affirmed the lower court's dismissal of the case in favor of arbitration because La. R.S. 22:868 was preempted by the Convention as an international treaty. *Id.* at 432. Accordingly, the court found that no conflict existed between the Convention and the statute. *Id.*

Because the arbitration clause falls under the Convention, plaintiff's argument that the state's anti-arbitration stance reverse-preempts the Convention is without merit. Thus, in view of the highly persuasive caselaw illustrating the Convention's preemptive effect, we find that the state of Louisiana does not have a materially greater interest in resolving the instant claim.

Therefore, in the absence of a state policy that would preclude enforcement of the arbitration agreement, the Court turns to the language used within the agreement. Parties agreed that "all matters in difference between the Insured and the Companies. . .in relation to this insurance" were to be arbitrated by a tribunal in New York pursuant to New York law. Rec. Doc. 13 at 3-4. Despite plaintiff's unsupported claims alleging otherwise, the Policy's choice of law clause serves as sufficient evidence that the parties agreed to apply New York law to *all* claims arising

under the Policy. Thus, New York law applies to resolve the pending motion as provided by the agreement.

### ii.   The Arbitration Provision

Generally, "whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration." *Sedco,* 767 F.2d at 1145; *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 [of the Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"). In light of the strong presumption favoring arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). However, courts should not order arbitration if the agreement is "null and void, inoperable, or incapable of being performed." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).

Enforcement of an arbitration agreement ordinarily requires a two-fold analysis: (1) whether the parties entered into any arbitration agreement at all and (2) whether the claim is covered by the agreement. *Kubala v. Supreme Production Services, Incorporated*, 830 F.3d 199, 201 (5th Cir. 2016). However, where the arbitration agreement includes a delegation clause that vests

21

authority in the arbitrator to determine whether the claim is arbitrable, there is a third inquiry determining who has the primary power to decide the arbitrability of the claim. *Id.* at 202. Unless in the exceptional case where the request to compel arbitration is "wholly groundless", motions to compel arbitration should be granted in the presence of a delegation clause. *Id.* at n.1 (". . .the court should not resolve the parties' arbitrability arguments. Instead, it should look only to whether there is a *bona fide* dispute on arbitrability. If there is, the claim should be referred to arbitration for resolution of the arbitrability issue.").

      a. *Whether the parties entered into an arbitration agreement*

Plaintiff argues that the Policy's service of suit endorsement supersedes the arbitration provision; thus, the arbitration agreement is null and void. Rec. Doc. 10 at 9. Although we determined that New York law applies, 1010 Common partially roots its argument in Louisiana case law which indicates, "If a conflict between the endorsement and the policy exists, the endorsement prevails." *Zeitoun v. Orleans Par. Sch. Bd.*, 2009-1130, (La. App. 4 Cir. 3/3/10), 33 So.3d 361, 365.

The endorsement in pertinent part indicates, per plaintiff, "in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriter hereon, at the

request of the Insured. . .will submit to the jurisdiction of a Court of competent jurisdiction within the United States." *Id.* at 3. However, plaintiff omits the relevant language thereafter:

> Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

Rec. Doc. 10-1 at 58. The service of suit provision does not negate this Court's jurisdiction as held in the *McDermott* case.

In *McDermott*, the plaintiff likewise argued that the same service of suit clause effectively waived the defendants' removal rights. *McDermott Intern., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1204-05 (5th Cir. 1991). Upon interpreting the provision, the Fifth Circuit found it unlikely that Underwriters "would secure an almost infinitely broad arbitration clause and also permit [the plaintiff] to attack it in the court of its choice." *Id.* at 1205. As such, the court found, "Underwriters executed the policy thinking that a subset of all disputes – those arising from the policy – would be determined by arbitration." *Id.* Moreover, the court held that the service of suit clause was not an express waiver of Underwriters' removal rights and was not purposed to "unambiguously give [plaintiff] the right to choose which forum would decide the arbitrability of their policy disputes." *Id.* at 1204; 1206. Rather, the court held that the

service of suit provision was intended to work in tandem with the arbitration clause by stating, "the service of suit clause's 'failure to pay a claim' provision could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *Id.* at 1205. To summarize, the service of suit clause permits a party seeking to enforce an arbitration award that Underwriters failed to pay in any court of competent jurisdiction.

Plaintiff contends that *McDermott* is inapplicable to this case because the policy herein contains "competing language." Rec. Doc. 10 at 12. Following the choice-of-law clause within the arbitration agreement, the final sentence thereafter states, "If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business." *Id.* According to plaintiff, this provision already permits a party to file suit to enforce an arbitration award which would negate the purpose of the Service of suit endorsement as interpreted by the *McDermott* Court. *Id.* at 13. 1010 Common also argues that *McDermott* does not support the instant endorsement clause because it is broadly written to apply to "any failure of the Underwriters hereon to pay any amount claimed to be due." *Id.* Thus, per plaintiff's position, this broad endorsement provision granting a court of competent jurisdiction the authority

to resolve *any* dispute arising from the Policy conflicts with the arbitration agreement and in turn renders the policy void and inapplicable. *Id.*

We find that the Policy's service of suit endorsement is consistent with *McDermott*'s finding that that there was no waiver of removal rights by merely supplying a general provision indicating the service of process in a court of competent jurisdiction. To demonstrate that this reasoning had been enforced in cases with similarly worded service of suit provisions, Underwriters cited to several cases, including the *Gemini Insurance Company* case. *Id.* at 15. The Southern District of Texas relied on the *McDermott* case to find that "the best way to harmonize" the two provisions was not to treat the Service of Suit provision as a general carveout from the "Law and Practice" provision; rather, the former provision only narrowly applied to suits to compel the other party to pay an arbitration award. *Gemini Ins. Co. v. Certain Underwriters at Lloyd's London*, No. H-17-1044, 2017 WL 1354149, at *7 (S.D.Tex. April 13, 2017); *see also Century Indem. Co. v. Certain Underwriters at Lloyds, London*, 584 F.3d 513, 554 (3rd Cir. 2009) ("service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration.").

Plaintiff's claim that the broad construction of the disputed service of suit provision is inconsistent with *McDermott*'s holding is without merit, considering that the language used in both provisions are nearly identical. Moreover, based on other courts' application of *McDermott* to similar service of suit provisions, we find that the instant provision was not intended to override the valid arbitration agreement.

> b. *Whether the claim is covered by the agreement*

As instructed by the Fifth Circuit, "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985). It is presumed that arbitration shall not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Sedco,* 767 F.2d at 1145 (ellipsis omitted) (quoting *Commerce Park of DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 338 (5th Cir. 1984)).

Drafting a broad delegation clause has the tendency to create a "presumption of arbitrability" covering all claims, disputes and other matters pertaining to the contractual agreement. *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 538 (5th Cir. 2019). "Doing so evinces clear and

unmistakable evidence that the parties intended to arbitrate." *5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F.Supp.3d 785, 790 (S.D.Tex. 2020) (internal quotes omitted) (citing *Lloyd's Syndicate 457 v. FloaTEC, LLC*, 921 F.3d 508, 514 (5th Cir. 2019)).

In *Sedco*, the Fifth Circuit characterized the agreement's language to arbitrate "any dispute" as broad. *Id.* at 1144-45 ("it is difficult to imagine broader general language than that contained in the arbitration clause"). In view of the parties' broad arbitration agreement, the Fifth Circuit held that the district court erred in refusing to order arbitration because "the parties agreed in writing that all disputes arising from their contractual relationship would be submitted to arbitration. Such an agreement falls squarely within Article II of the Convention." *Id.* at 1151.

Underwriters purport that the following provision is a valid broad delegation clause, which requires "all matters in difference between the Insured and the Companies. . .in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal. . ." Rec. Doc. 4-1 at 3; 9.

In support of their argument, Underwriters cite to several cases that found the same arbitration clause to be valid and in turn required arbitration. *See St. Theresa Specialty*

27

*Hospital, LLC v. Indian Harbor Insurance*, No. 19-12126, 2019 WL 8362168, at *2 (E.D.La. Oct. 22, 2019) (Feldman, J.)(compelling plaintiff to arbitrate its claims in accordance with 9 U.S.C. § 206 and §VII(C) of the insurance contract); *Port Cargo,* 2018 WL 4042874 (granting the defendant's motion to stay litigation pending arbitration because plaintiff's extra-contractual claims under Louisiana law were also subject to arbitration); *5556 Gasmer Mgmt.*, 463 F.Supp.3d at 790-91 ("This Court agrees that *all* means just that – *all.* But even if it somehow didn't, the delegation clause on its face makes 'formation and validity' or the arbitration agreement expressly part and parcel of 'all disputes' that must be submitted to arbitration.")

Plaintiff argues that giving effect to the arbitration provision despite the allegedly contradictory service of suit endorsement would render the endorsement language superfluous which is considered unreasonable under Louisiana law. Rec. Doc. 10 at 11. Simply put, 1010 Common asserts that the two provisions could not be read together and reconciled to give both equal effect. *Id.* at 12. That argument does not stand, as noted *infra*, based on the clear holding in *McDermott* and its progeny, indicating that the two provisions are not in conflict.

28

Notably, plaintiff does not dispute that its claim does not fall under the considerable breadth of "all matters in difference." Thus, we can reasonably conclude that the claim relating to the Loss and Policy is a matter in difference between the insured and the insurers. Because the instant arbitration clause contains either identical or at least similarly broad language as the aforementioned case examples, the delegation clause refers all disputes, including the pending matter, to arbitration, as covered by the arbitration agreement.

c. *Who has the primary power to determine arbitrability*

"When the parties' contract delegates the arbitrability question to the arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, ---- U.S. ----, 139 S.Ct. 524, 529 (2019). If a court determines that the agreement contains a valid delegation clause, "the role of the federal court is strictly limited," and the matter must be referred to arbitration "absent some exceptional circumstance." *Kubala*, 830 F.3d at 203. However, if the agreement does not contain a delegation clause, the court must perform a traditional arbitrability analysis. *Id.*

To demonstrate a valid delegation clause, the Fifth Circuit in *Kubala* reviewed a clause that called for the arbitrator to be the sole authority on challenges pertaining to the "existence,

29

applicability, scope, enforceability, construction, validity and interpretation" of the Policy. *Id.* at 204. Because this delegation clause was almost identical to the valid clause in *Rent-A-Center*, it was deemed valid and enforceable. *Id.; see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010).

In *5556 Gesmer Management*, the district court compelled arbitration because an identical delegation clause distinctly referred all disputes to arbitration, including preliminary concerns of arbitrability and contractual validity. *5556 Gesmer Mgmt.*, 453 F.Supp.3d at 791. As such, the court stated, "whether the merits of [p]laintiff's claims will be arbitrated rather than tried in court is a decision properly left in these circumstances and under this contract to the arbitration tribunal." *Id.*

Plaintiff does not separately address this issue. Nevertheless, for the purpose of completeness, we will determine whether there is a valid delegation clause. The instant delegation clause requires all matters in difference, including the formation and validity of the insurance contract, to be referred to the Arbitration Tribunal. Rec. Doc. 13 at 3. The Policy references all claims, including the arbitrability of the dispute. Rec. Doc. 4-1 at 9. Because the broad language used mirrors the example clauses in *Kubala* and *5556 Gesmer Management*, there is a valid and enforceable delegation clause that requires the instant dispute to be arbitrated by the Tribunal.

30

Because the Policy contains an enforceable arbitration agreement, the matter must be referred to the Arbitrational Tribunal as provided in the contract. Moreover, because plaintiff's claims are related to a valid arbitration clause, plaintiff's request to remand the matter back to state court is rejected.

### C. **Stay vs. Dismissal**

As previously stated, if the dispute is subject to arbitration, the court shall stay the action pending the outcome of arbitration. *Sedco*, 767 F.2d at 1146 (citing 9 U.S.C. § 3). Accordingly, because the Convention Act incorporates the FAA, "parties whose agreements fall under the Convention have had to seek authority for stays under 9 U.S.C. § 3. . ." *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, No. 08-1195, 2011 WL 1226464, at *2 (E.D.La. March 28, 2011).

A stay of the proceeding is mandatory "when a party demonstrates that any issue involved in the lawsuit is referable to arbitration under an agreement in writing for such arbitration." *Broussard v. First Tower Loan, LLC*, 150 F.Supp.3d 709, 726 (E.D.La. 2015). Thus, when a valid arbitration agreement governs, the court may not deny a stay. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Although it may not deny a stay where it is proper, the court has the discretion to dismiss the

case if it determines that all the claims are subject to arbitration. *Id.* To be clear, dismissal is not mandated.

Because plaintiff's claims are subject to a valid arbitration agreement, Underwriters assert that a stay is mandatory but requests the Court to exercise its discretion to dismiss the matter entirely. Rec. Doc. 4-1 at 17-18. As noted earlier, this action pertains to benefits sought under the Policy and entirely subject to mandated arbitration.

Plaintiff does not fully address the dismissal issue  but generally argues a stay need not be considered because the arbitration agreement was voided by the service of suit endorsement. Rec. Doc. 10 at 15. Contrary to that argument, and for reasons given above, the arbitration agreement has been found entirely valid and enforceable.

Because all of plaintiff's claims are subject to mandatory arbitration, dismissal is reasonably justified but without prejudice to post-arbitration remedies by judicial review of the arbitrator's award in the limited manner prescribed by law. See 9 U.S.C. sections 9-12; *Compare Katz v. Cellco P'ship*, 794 F.3d 341, 345-47 (2d Cir. 2015), *with Alford,* 975 F.2d at 1164.

New Orleans, Louisiana this 9th day of December, 2020

SENIOR UNITED STATES DISTRICT JUDGE

32